UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **CHARISE VALENTINE, M.D.,** Defendant. | 2:18-CR-20513-TGB-APP HON. TERRENCE G. BERG **ORDER GRANTING GOVERNMENT'S MOTION FOR IMPOSITION OF FORFEITURE MONEY JUDGMENT (ECF NO. 303)** |

This matter comes before the Court on the United States' Motion for Imposition of Forfeiture Money Judgment against Defendant Charise Valentine ("Dr. Valentine"). ECF No. 303. Dr. Valentine opposed the Motion. ECF No. 307. The Court heard oral argument at sentencing on September 23, 2025. For the reasons given on the record, as supplemented by this written Order, the Motion is **GRANTED**.

**I. BACKGROUND**

Between November 2016 and July 2018, Dr. Valentine conspired with co-defendants to possess with intent to distribute and to distribute controlled substances, including but not limited to the Schedule II drugs Oxycodone HCI and Oxymorphone HCI while working as a physician at Orthopedic Medical Building ("OMB").

On June 13, 2023, a Second Superseding Indictment was filed charging Dr. Valentine with violating 21 U.S.C. §§ 841(a)(1) and 846 and

seeking criminal forfeiture pursuant to § 853. ECF No. 198.

In April 2025, a jury found Dr. Valentine guilty on all counts. ECF No. 265. The Government now seeks entry of a forfeiture money judgment against Dr. Valentine in the amount of $561,545.00, which it contends "represents a reasonable approximation of the amount of gross proceeds defendant personally obtained or derived, directly or indirectly, as a result of her violations." ECF No. 303, PageID.3286.

**II. LEGAL STANDARD**

Under 21 U.S.C. § 853(a) and Federal Rule of Criminal Procedure 32.2(b), forfeiture is a mandatory part of a defendant's sentence. *See* 21 U.S.C. § 853(a)(1) (upon conviction, a defendant "*shall* forfeit to the United States . . . (1) any property constituting, or derived from any proceeds the person obtained, directly or indirectly, as the result of such violation") (emphasis added); *United States v. Monsanto*, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied[.]"); *United States v. O'Dell*, 247 F.3d 655, 680 (6th Cir. 2001) ("We agree that the language of § 853(a) is mandatory.").

"[T]he court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. Proc. 32.2(b)(1)(A). The government has the burden of establishing the amount of the forfeiture money judgment by a preponderance of the evidence. *United States v. Smith*, 749 F.3d 465, 488 (6th Cir. 2014). In making the determination

regarding forfeiture, the court may rely on "evidence already in the record," as well as "any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. Proc. 32.2(b)(1)(B); *see also United States v. Corrado*, 227 F.3d 543, 555 (6th Cir. 2000) (noting that the court is required to make a reasonable approximation based on the evidence in the record to establish the amount of the forfeiture judgment).

### III. DISCUSSION

The Government argues that the money judgment should equal the reasonable approximation of the total amount of the gross proceeds traceable to the overall scheme that Dr. Valentine personally obtained from the drug conspiracy. It argues that the testimony and evidence at trial—including various accounting records, patient records, and administrative documentation seized from OMB, and the testimony of Iris Winchester, Dr. Ritter, and Steven Bowler—support the imposition of a $561,545.00 money judgment against Dr. Valentine.

The Government's Litigation Financial Analyst, Steven Bowler, compiled that evidence into a spreadsheet. ECF No. 303-1, PageID.3298. The spreadsheet summarizes that Dr. Valentine worked at OMB for 188 days from November 2016 to July 2018, and specifically received $9,300.00 in 2016, $365,730.00 in 2017, and $186,515.00 in 2018, for a total of $561,545.00. *See United States v. Elder*, 682 F.3d 1065, 1073 (8th Cir. 2012) (in computing the amount of forfeiture money judgment in an

illegal drug distribution case, the court may appropriately use the financial analyst's unimpeached calculation of the proceeds).

Dr. Valentine challenges the reliability of the summary, which primarily relies on records in the form of "sticky notes" that Iris Winchester, the owner of OMB, and arguably the mastermind behind the criminal operation, prepared. Dr. Valentine argues those records are not reliable: Winchester is a co-defendant, she admitted to fraudulently creating some financial records, and the Government made no efforts to verify that the amount indicated on the sticky notes was actually provided to Dr. Valentine and Dr. Ritter, the doctors working at OMB. However, Bowler testified he excluded from his final tally of payments any documents or note that contained any apparent ambiguity. ECF No. 313, PageID.3800, 12:4-8. Bowler also testified he correlated the prescriptions written by Dr. Valentine for each patient on file to the financial records to ensure only the proceeds generated from Dr. Valentine's work were counted against her. *Id.* at PageID.3809-11. A significant indicia of reliability also comes from the testimony presented at trial that the financial records seized from OMB files were made contemporaneously and stored at OMB, and not in preparation for litigation. These records were recovered during the search warrant in OMB's offices and files—they were clearly being used by Winchester to track payments to the doctors who were prescribing the controlled substances.

4

Furthermore, at trial, the government presented evidence that Dr. Valentine illegally issued over 2,600 prescriptions for Oxycodone 30 mgs pills—which OMB charged $200 per prescription—and more than 800 prescriptions for Oxymorphone 40 mgs pills—which OMB charged $500 per prescription. The Government noted that these prescription amounts do not include all of Dr. Valentine's prescribing at OMB, but only those that were the focus of the trial evidence. Based on Winchester's testimony that she paid the doctors about half or a third of the amount taken in from selling the prescriptions at that rate, Dr. Valentine would have received between $307,000.00 (a third) and $460,000.00 (half) for those prescriptions introduced into evidence at trial, using the traditional method of calculating the amount of proceeds based on the quantity and price of the prescriptions.

But Dr. Valentine highlights that Dr. Ritter testified that she was paid approximately $2,125 per week, which casts doubts on Winchester's assertion that she paid the doctors about half or a third of the prescription costs. At Dr. Ritter's rate, Dr. Valentine would have received about $183,000.00 for 86 weeks of work at OMB. But that estimation is contradicted by Winchester's 2017 tax records, which are consistent with Bowler's summary, reporting Dr. Valentine was paid $365,730.00 in 2017. Though those records were admittedly fraudulent, it is reasonable to assume they *under-reported* Dr. Valentine's earnings, rather than over-reported them. Furthermore, significant and repeated testimony

5

was presented at trial indicating that Winchester provided Dr. Valentine with envelopes containing cash each day, rather than every few weeks.

Finally, Dr. Valentine argues that the disparity in the amount of money judgment sought by the government for the different co-defendants is constitutionally improper. She argues the amount of forfeiture must be "proportional to the seriousness of the offense so as not to violate the Eight Amendment prohibition against 'cruel and unusual punishment' or 'excessive fines.'" *United States v. Corrado*, et al., 227 F.3d 543, 552 (6th Cir. 2000). "[T]he proportionality required forbids only extreme sentences that are grossly disproportionate to the crime . . . . The test is rarely met." *United States v. Young*, 766 F.3d 621,625 (6th Cir. 2014) (citations and internal quotation marks omitted).

Comparison between co-defendants does not appear to be a factor in determining whether a forfeiture is grossly disproportionate.[1] But even if the Court compared forfeiture among the co-defendants in this case, it would not help Dr. Valentine much. Dr. Valentine challenges her differential treatment compared to Iris Winchester who was only ordered to forfeit $379,607.00, ECF No. 290. But that figure was not determined

---

[1] The Government also argues that the concern for unwarranted sentence disparities among similarly situated defendants under § 3553(a)(6) might not apply to the calculation of forfeiture. *See United States v. Bradley*, No. 3:15-CR-00037-2, 2019 WL 3934684, at *12 (M.D. Tenn. Aug. 20, 2019), *aff'd*, 969 F.3d 585 (6th Cir. 2020) ("No part of § 853 suggests that courts are to take into account the equitable factors enumerated in § 3553(a) in calculating the amount to be forfeited.").

as a money forfeiture judgment or estimate of ill-gotten gains—it was the amount of cash seized during the take-down of the operation, an actual physical forfeiture. And as to Dr. Ritter, the Government sought and received an order for money judgment forfeiture in the amount of $958,500.00, which is much more than what the Government is seeking against Dr. Valentine. ECF No. 260. Thus, it appears the amount the Government is seeking for Dr. Valentine is proportional to her participation when compared with the other doctor who was part of the conspiracy, and when considered on her own. Indeed, the Government alleges that during her participation in the conspiracy, Dr. Valentine prescribed more than 200,000 opioid pills, and the Government seeks to hold her accountable for only a portion of the proceeds generated by the conspiracy related to those.

Thus, the evidence presented at trial, over which this Court presided, during oral argument, and all other information on record in this case support the imposition of a $561,545.00 money judgment against Dr. Valentine, which the Court finds to be reasonable and not grossly disproportionate to the gravity of the offense. *See United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011) (holding that calculation of forfeiture money judgment need not be exact and the government may rely on reasonable estimates).

## IV. CONCLUSION

Having reviewed the parties' briefs, carefully considered the

parties' oral arguments, presided over Dr. Valentine's trial, and in view of all the testimony and exhibits presented at trial and the other information on record in this case, the Government's Motion for Imposition of Forfeiture Money Judgment (ECF No. 303) is **GRANTED**.

**IT IS HEREBY ORDERED** that:

1. Pursuant to 21 U.S.C. § 853(a) and Federal Rule of Criminal Procedure 32.2, a forfeiture money judgment in the amount of Five Hundred Sixty-One Thousand Five Hundred Forty-Five Dollars and 00/100 ($561,545.00) is entered against defendant in favor of the United States of America.

2. If defendant does not pay the forfeiture money judgment, the United States may move to satisfy the forfeiture money judgment with any assets defendant has now or may later acquire. Later acquired assets may be forfeited as substitute assets under 21 U.S.C. § 853(p)(2). The United States is permitted to undertake whatever discovery is necessary to identify, locate, or dispose of substitute assets under Fed. R. Crim. P. 32.2(b).

3. This Order of Forfeiture shall become final at sentencing and entry of the forfeiture money judgment shall be included in the Judgment and shall not be the subject of ancillary proceedings given that the forfeiture consists entirely of a money judgment.

4. The Court retains jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Fed. R. Crim. Proc. 32.2(e).

**IT IS SO ORDERED.**

Dated: September 24, 2025        /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE